WALTON v. HARIGEL et al. (No. 7032.)

(Court of Civil Appeals of Texas. Galveston. Jan. 13, 1916.)

1. MUNICIPAL CORPORATIONS ⟨key⟩654— EVIDENCE—ESTABLISHMENT OF STREET.

In a suit to restrain the obstruction of a street or roadway, evidence *held* insufficient to show that the way had ever been a public street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1428; Dec. Dig. ⟨key⟩654.]

2. EASEMENTS ⟨key⟩32—LOSS BY ADVERSE HOLDING.

Where a right of way given in a deed was fenced by consent, but shortly after the owner of the property repudiated the easement and held it exclusively and adversely for 20 years, the easement was lost, since a private easement can be lost if a person who has such right is excluded from its use by adverse possession and claim for the length of time required by the statute of limitations.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 84; Dec. Dig. ⟨key⟩32.]

3. EASEMENTS ⟨key⟩32—ADVERSE POSSESSION—STATUTE.

Sayles' Ann. Civ. St. 1897, art. 3351, which provides that no person shall "ever acquire by occupancy or adverse possession any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated to public use in any town, city or county, by the owner thereof, or which have been laid out and designated in any manner to public use in any town, city or county in this state," has no application to a mere private easement.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 84; Dec. Dig. ⟨key⟩32.]

Appeal from District Court, Austin County; Frank S. Roberts, Judge.

Suit by R. T. Walton against Bertha Harigel and others. From a verdict for the defendants, the plaintiff appeals. Affirmed.

Duncan & Duncan, of Bellville, for appellant. Searcy & Botts, of Brenham, for appellees.

PLEASANTS, C. J. This is a suit for injunction brought by appellant against appellees to restrain the obstruction of a street or roadway upon which appellant's property abutted and which he alleged extended southward from appellant's land across the homestead of appellees. A temporary injunction was granted by the district judge restraining appellees from obstructing the street claimed by appellant.

Appellees by their answer, filed after the injunction was granted, denied that there was ever any street across their homestead, or that any easement across same was ever granted to appellant or his vendors. They further alleged that the street or easement claimed by appellant is across property which was acquired by them in 1871 and has been

used and occupied as their homestead since said date, and that said property had been inclosed and in the exclusive possession of appellees since 1890.

Upon final trial in the court below the judge, after hearing the evidence, upon his own motion withdrew the cause from the jury, and rendered a judgment by which the temporary injunction was perpetuated as to that portion of the street claimed by appellant coterminous with the western line of his property, and as to the remainder of the alleged street or easement said injunction was dissolved.

The undisputed evidence shows that appellee Bertha Harigel and her deceased husband, William Harigel, purchased the tract of seven acres of land, across which the street described and claimed by appellant is located, in June, 1871, and said appellee has had her homestead upon this tract since said date. This seven-acre tract of land is bounded on its northeast side by a public road of Austin county, and by another public road on its east or southeast side. It fronts on its west side on the right of way of the Gulf, Colorado & Santa Fé Railway Company. A portion of the tract is upon outlot No. 10 of the town of Bellville. The line along the public road before mentioned, which is its longest line, runs S. 68½° E. The course of its eastern line, which is about one-half the length of the line before mentioned along the public road, is S. 21½° W. The southern line is parallel with the line first described, but is a few yards shorter, and the western or fourth line of the tract runs due north and south. There is no street or public road adjacent or near this tract on its southern side. In December, 1881, William Harigel and wife, Bertha Harigel, sold to H. Schlosser a tract or parcel of land 100 by 120 feet in dimension out of their homestead tract. This tract or parcel of land abuts upon the public road before mentioned for a distance of 120 feet. In the deed from the Harigels it is described as follows:

"Beginning at a cedar stake set for the N. W. corner in the N. line of said [Bellville] town tract; thence S. 68½° E. (67°) with the same 120 feet to a cedar stake set for the N. E. corner; thence S. 21½° W. 100 feet to a cedar stake set for the S. E. corner; thence N. 68½° W. (67°) 120 feet to a cedar stake set on the E. side of a 60 ft. wide street; thence N. 21½ E. 100 feet with said street to the place of beginning."

Shortly after their purchase Schlosser and his wife built a house and moved on their lot. They fenced the greater portion of the lot. The Harigel improvements were in the northwest corner of the seven-acre tract. All of the eastern and southern portions of this tract were open, persons going to and from the town of Bellville traveled across it, and there is evidence that this travel had made a road across the tract and other tracts adjoining it on the south; but the undisputed evidence shows that it was never recognized as a public road of Austin county or a street of the town of Bellville.

In 1890 Harigel fenced all of his tract, except a strip 60 feet wide by 100 feet long along the west side of the Schlosser tract. In making this inclosure he, with the consent of the Schlossers, joined his fence to theirs and agreed with them that they might pasture their calves in his (Harigel's) inclosure, which he used for a pasture. In a few months after this agreement was made Harigel and Schlosser disagreed as to the use of the pasture by Schlosser, and the latter moved his fence a few feet back from his line, and Harigel built a fence along the line between him and Schlosser. The entire property has remained inclosed since 1890, and has been used and claimed by Harigel and his wife as a part of their homestead. Schlosser died testate in 1897, and by his will, which was duly probated, bequeathed his property to his wife. In April, 1909, Mrs. Schlosser sold the place she and her husband had purchased from Harigel to H. F. Granau. In 1914 Granau sold to appellant. In both of the conveyances last mentioned the description of the property is identical with the description in the deed from the Harigels to Schlosser. Mrs. Schlosser testified in regard to the agreement of Harigel to give a street across his property, and the subsequent fencing of the property by Harigel, as follows:

"Mr. Harigel gave us a street to the depot, and he (Mr. Harigel) was willing to sell the other land for lots. There was a street in front of our house, I told you it was all open to the depot. As to how the place ever happened to be closed up, will say Mr. Harigel came one Sunday down at home. When he came down, my boy was sick, and I thought at first he came down to see him, and he talked to me first, and then he asked: 'Where is your husband?' I told him: 'He is in town.' Then he told me he wanted to fence up that piece, make a little piece out of it for his calves and horses in there, and he wanted to allow us to bring our calves in there, and he wanted to fence from our fence on; so of course, it was for us all right. We have no horse and we have no buggy to travel that road, and it was nice in the morning to go after the calves; so they agreed to make a gate from the cow pen to that pasture. Well, it was all right, and I told him when he left, I says: 'We won't fight about the land or about the fence.' That is what I said to him—the same words. And after this we had trouble about that, just about the fence. Then when Mr. Harigel make up the fence, well, he came to my husband and said: 'Well, Herman, I tell you that is not enough to eat for all our cattle in there. I have to' some times use several horses and calves.' And so he don't allow us to use it. Well, Mr. Schlosser don't say nothing, but he (Mr. Harigel) just fenced our piece off, and it was closed up."

In November, 1890, after Schlosser and Harigel had fallen out about the fences and the use of the pasture, Schlosser and others presented a petition to the commissioners' court of Austin county to establish a public road across the Harigel tract just where the street is now claimed, and across the lands south of Harigel's, to a connection with a public road or a street of the town of Bellville near the railway depot. Upon the re-

port of the jury of view appointed by the court the petition was refused. In August, 1907, appellant and others presented a petition to said court asking for the establishment of said road. This petition was refused by the court after the report of the jury of view.

We think upon this evidence no other judgment than one in favor of the appellees could have been properly rendered.

[1] There is no evidence that the street or easement claimed by appellant was ever a public road of Austin county or a street of the town of Bellville. Neither the town nor the county could have had any interest in a street or road only a few hundred feet in length and which did not furnish a passageway for the citizens of the town or county, and it is not claimed that the alleged street extended south beyond appellees' land, and, when the commissioners' court was petitioned to establish a street across appellee's land and the adjacent land on the south so as to furnish a road or passageway for the public, the petition was rejected.

[2] The only claim of appellant that finds any support in the evidence is the claim that by his deed and his promise to Schlosser Harigel agreed to give Schlosser a street 60 feet wide entirely across appellees' tract of land. If the jury had found that this was true, the undisputed evidence shows that more than 20 years before this suit was filed Harigel had fenced all of his property, and he and appellee Bertha Harigel have continuously since that time held exclusive and adverse possession of all of the land, claiming and using it as a part of their homestead, and upon that state of the evidence the trial court was authorized to take the case from the jury and render judgment for the appellees upon their plea of limitation. We hardly think the testimony of Mrs. Schlosser goes further than to show that Harigel asked permission to use a portion of the Schlosser fence in inclosing his property, and was not asking permission to take possession of the strip of land in controversy. But, if it be conceded, as claimed by appellant, that this testimony shows that Harigel took possession of the strip by the consent and agreement of Schlosser, the undisputed evidence shows that shortly thereafter he repudiated any right of Schlosser in a street or easement across his property, and we find Schlosser attempting to induce the county to open a road across the property. Such being our conclusion as to the effect of the undisputed evidence, it is unnecessary to set out or discuss any of appellant's assignments of error, because, if any error is shown by any of them, it must be regarded as harmless.

[3] It goes without saying that the statute (article 3351, Sayles' Civil Statutes) which provides that no person "shall ever acquire by occupancy or adverse possession any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any town, city or county by the owner thereof, or which have been laid out and designated in any manner to public use in any town, city or county in this state," has no application to a mere private easement, and the right to such easement can be lost if the person who has such right is excluded from its use by adverse possession and claim for the length of time required by the statute of limitation.

We are of opinion that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.